UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF
AMERICA,

      Plaintiff,

    v.                                                      Case No. 8:25-cv-2336-KKM-NHA

UNDETERMINED QUANTITIES
OF UNAUTHORIZED
ELECTRONIC NICOTINE
DELIVERY SYSTEM ENDS
PRODUCTS LOCATED AT
BOUSLIMI HOLDINGS INC DBA
MARATHON FOOD CENTER
LOCATED AT 3101 WEST
COLUMBUS DRIVE TAMPA
FLORIDA,

      Defendant.

_____/

## REPORT AND RECOMMENDATIONS

This is an action for forfeiture *in rem* and condemnation of certain electronic nicotine delivery system ("ENDS") products offered for sale at a Tampa convenience store. On March 6, 2026, after no claimants appeared in the action, the Clerk entered default against all potential claimants. Doc. 18. The United States now moves for a final default judgment. Doc. 19. Upon consideration of the motion and the verified complaint, I respectfully recommend that the District Court grant the motion for default judgment,

direct the Clerk to enter a judgment in favor of the United States, and order the forfeiture, condemnation, and destruction of the property.

## I.   Background

On September 2, 2025, the United States filed a civil *in rem* complaint seeking the forfeiture and condemnation of undetermined quantities of unauthorized "ENDS" products (collectively, the "Defendant Products"), which were being sold at the Marathon/Food Center located at 3101 West Columbus Drive, Tampa, Florida, 33607, (the "Marathon"). Doc. 1. The complaint alleged that the Defendant Products were adulterated and misbranded tobacco products as defined under 21 U.S.C. § 387b(6)(A) and § 387c(a)(6). Doc. 1 ¶¶ 14–43.

Because the Defendant Products were not then in the United States' possession, custody, or control, the Court issued a warrant of arrest *in rem*, pursuant to Supplemental Rule G(3)(b)(ii).[1] Doc. 8. The U.S. Marshal executed the warrant, taking possession of the Defendant Products, on September 10, 2025. Doc. 12.

On March 2, 2026, the United States moved for entry of Clerk's default against all potential claimants to the Defendant Products, asserting that it had

---

[1]In civil forfeiture actions against property that is not in the government's possession, "the court —on finding probable cause —must issue a warrant to arrest the property." SUPP. R. G(3)(b)(ii). Service of process is then completed by executing the warrant. SUPP. R. G(3)(c).

provided notice to all known and unknown potential claimants, and that no claim to the Defendant Products had been filed within the sixty-day period designated on the notices and by Supplemental Rule G(5)(a)(ii). Doc. 16. The Court found that the United States had satisfied the notice requirements under Supplemental Rule G, confirmed no claim had been filed within the relevant period, and granted the United States' motion, directing the Clerk to enter default against all non-appearing claimants. Doc. 17. On April 6, 2026, the Clerk entered default against "ALL NON-[APPEARING] CLAIMAINTS, INCLUDING BUT NOT LIMITED TO BOUSLIMI HOLDINGS, INC. DBA MARATHON/FOOD CENTER, IMED BOUSLIMI, AND TALAL SHUMAN." Doc. 18.

On April 20, 2026, the United States filed the present motion, seeking "an order adjudging the Defendant Products to be adulterated and misbranded as alleged in the Verified Complaint and ordering condemnation, forfeiture, and destruction by default judgment in favor of the United States and against the Defendant Products." Doc. 19 p. 7.

## II.   Legal Standards

The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture actions provide the procedural rules for "forfeiture actions *in rem* arising from a federal statute." SUPP. R. A(1)(B); *see also* 18 U.S.C. § 983(a)(4)(A) ("In any case in which the Government files in the appropriate

3

United States district court a complaint for forfeiture of property, any person claiming an interest in the seized property may file a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims. . .”). “The Federal Rules of Civil Procedure also apply to [forfeiture *in rem*] proceedings except to the extent that they are inconsistent with the[] Supplemental Rules.” SUPP. R. A(2). Federal courts considering the question have found Rule 55 of the Federal Rules of Civil Procedure, governing entries of default and default judgments, to be consistent with the Supplemental Rules and thus applicable in forfeiture and admiralty actions. *See, e.g., United States v. Starling*, 76 F.4th 92, 100 (2d Cir. 2023); *United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 163 (1st Cir. 2004).

“When a defendant has failed to plead or defend, a district court may enter judgment by default.” *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015) (citing FED. R. CIV. P. 55(b)(2)). A Clerk’s default under Rule 55(a) deems a defendant to admit a plaintiff’s well-pleaded allegations of fact. *Id.* at 1245 (citing *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005)). However, a defendant “is not held to admit facts that are not well-pleaded or to admit conclusions of law.” *Cotton*, 402 F.3d at 1278 (citation and quotations omitted). So, notwithstanding entry of a Clerk’s

4

default, the court may enter a default judgment under Rule 55(b) only if the pleadings sufficiently support a judgment. *Id.*

Generally, courts considering motions for default judgment assess the pleadings by a standard "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245. In most cases, this inquiry asks "whether the complaint 'contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, the Supplemental Rules provide a different pleading standard for forfeiture *in rem* actions: Rule G requires that a verified complaint "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." SUPP. R. G(2)(f).

## III.   Analysis

### a.  Subject Matter Jurisdiction

United States district courts have subject matter jurisdiction over cases seeking "recovery or enforcement of . . . forfeiture, pecuniary or otherwise, incurred under any Act of Congress, except matters within the jurisdiction of the Court of International Trade." 28 U.S.C. § 1355. Separately, federal district courts have subject matter jurisdiction over any civil action brought by the United States. *Id.* § 1345.

Here, the Court has subject-matter jurisdiction over this case on two independent bases: it is a forfeiture action brought under an act of Congress, namely 21 U.S.C. § 334(a)(2), which provides for the condemnation and forfeiture of adulterated or misbranded tobacco products; and the United States brings this case.

### b. *In Rem* Jurisdiction

"The presence of the res within a court's territorial jurisdiction is necessary before the court can proceed to adjudication." *L.B. Harvey Marine, Inc. v. M/V River Arc,* 712 F.2d 458, 459 (11th Cir. 1983); *see also* 21 U.S.C. § 334(a)(2)(E) ("Any adulterated or misbranded tobacco product . . . shall be liable to be proceeded against at any time on libel of information and condemned in any district court of the United States . . . within the jurisdiction of which [it is] found.").

Here, when the Verified Complaint was filed, the Defendant Products were located at the Marathon in Tampa, Florida. Doc. 1 ¶ 1. The Defendant Products were subsequently seized by the U.S. Marshal of this District. Doc. 12. The Court has *in rem* jurisdiction over the Defendant Products.

### c. Notice

"A judgment of forfeiture may be entered only if the government has published notice of the action within a reasonable time after filing the complaint or at a time the court orders." SUPP. R. G(4)(a)(i). Additionally, "[t]he

6

government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim." SUPP. R. G(4)(b)(i). Rule G(4) provides specific requirements for the content, frequency, and content of the published notice and of any direct notice to known potential claimants.

Here, as stated in the Court's order granting the United States' motion for entry of Clerk's default, the United States met Rule G's notice requirements. *See* Doc. 17 p. 5. The United States satisfied the publication requirement by posting notice of the action on "an official government forfeiture site for at least 30 consecutive days." SUPP. R. G(4)(a)(iv)(C). The United States also sent notice of the action and a copy of the Verified Complaint to all known potential claimants, in compliance with Supplemental Rule G(4)(b)(i). In compliance with Supplemental Rule G(4)(a)(ii), the notice was accompanied by a dated letter, directing claimants to file claims on or before November 12, 2025, which was more than 35 days after the notice was sent, and naming the government attorney to be served with the claim and answer. Docs. 13, 16.

### d.  Subject to Condemnation and Forfeiture

With the jurisdictional and procedural prerequisites satisfied, and with the Clerk's default properly entered, the United States is entitled to a final

7

default judgment if the Verified Complaint "state[s] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." SUPP. R. G(2).

The United States proceeds under 21 U.S.C. § 334 of the Food, Drug, and Cosmetic Act (FDCA), which authorizes the seizure, forfeiture, and condemnation of certain food, drug, and tobacco products that violate other FDCA provisions.[2] Section 334 authorizes *in rem* proceedings against "any adulterated or misbranded tobacco product." 21 U.S.C. § 334(a)(2)(E).

---

[2] Section 334 does not use the term "forfeiture," instead referring to "seizure" (i.e., the United States' initial taking of the products) and "condemnation" (i.e., a judicial determination that the products violate the FDCA). *See* 21 U.S.C.A. § 334(b). However, the Eleventh Circuit and other circuit courts use the term "forfeiture" when discussing Section 334 proceedings. *See United States v. Undetermined Quantities of All Articles of Finished & In-Process Foods*, 936 F.3d 1341, 1351 (11th Cir. 2019) ("The governing statute provides notice that unapproved food additives are subject to forfeiture.") (citing 21 U.S.C. § 334(a)(1)); *United States v. Kanasco, Ltd.*, 123 F.3d 209, 210–11 (4th Cir. 1997) ("Adulterated drugs are subject to forfeiture under 21 U.S.C.A. § 334(a)(1)."); *United States v. Argent Chem. Laboratories, Inc.*, 93 F.3d 572, 574 (9th Cir. 1996) (describing a Section 334(b) proceeding as "an action by the United States for a forfeiture for federal statutory violations"); *United States v. Articles of Drug for Veterinary Use*, 50 F.3d 497, 499 n. 2 (8th Cir. 1995) ("The FDCA prohibits shipment of 'adulterated' drugs in interstate commerce, and adulterated drugs are subject to forfeiture."); *but see United States v. Fishman*, 157 F.4th 143, 171–72 (2d Cir. 2025) (holding that "21 U.S.C. § 334 is not a civil forfeiture statute *within the meaning of § 2461(c),*" (a statute allowing for forfeiture orders in criminal prosecutions that are associated with certain civil forfeiture statutes), but acknowledging that "we and other courts have sometimes used the term

Generally, the government must prove its case in a civil forfeiture action by a preponderance of evidence. *See United States v. Wood*, 226 F.2d 924, 925 (4th Cir. 1955) ("It is well settled that seizures under the Federal Food, Drug and Cosmetic Act, 21 U.S.C.A. § 301 *et seq.*, are civil in nature. The Government need prove its case only by a preponderance of the evidence."); *United States v. A Single Fam. Residence & Real Prop. Located at 900 Rio Vista Blvd., Fort Lauderdale*, 803 F.2d 625, 629 (11th Cir. 1986) ("Once the government demonstrates that probable cause exists, the burden of proof in a civil forfeiture proceeding shifts to the claimant to establish by a preponderance of the evidence that the property is not subject to forfeiture.")

Thus, to support a final default judgment, the facts stated in the Verified Complaint must create a reasonable belief that the United States can show by a preponderance of the evidence that the Defendant Products are tobacco products that have been adulterated or misbranded.

---

'forfeiture' interchangeably with 'seizure' and 'condemnation' in discussing 21 U.S.C. § 334").

Here, the case is *procedurally* a forfeiture action, as the United States initiated the case with a complaint for *in rem* forfeiture, as is the routine practice in Section 334 proceedings. I thus refer to the final remedy sought by the United States as both "forfeiture" and "condemnation."

   i. The Defendant Products are tobacco products.

The allegations in the Verified Complaint demonstrate that the Defendant Products are "tobacco products" under the FDCA. Doc. 1 ¶¶ 25-28.

The FDCA defines "tobacco product" as "any product made or derived from tobacco, *or containing nicotine from any source*, that is intended for human consumption." 21 U.S.C. § 321(rr) (emphasis added).

Here, the Verified Complaint states that the FDA's Center for Tobacco Products determined that the Defendant Products "1) were ENDS; and 2) were labeled as containing nicotine." Doc. 1 ¶ 20. Submitted with the Verified Complaint was the sworn declaration of Jill Atencio, Deputy Director of the Office of Compliance and Enforcement at the Center for Tobacco Products within the FDA, affirming the allegations in the complaint. Doc. 1 p. 16.

Additionally, the complaint includes photographs of several of the brands of electronic cigarettes comprising the Defendant Products—specifically, Geek Bar, Lost Mary, HQD, and Raz—purchased from the Marathon in August 2025. Doc. 1 ¶¶ 13-19. The photographs show that labels on the e-cigarettes indicated that the products contained nicotine. *Id.* The Eleventh Circuit has recognized that ENDS—including e-cigarettes and the "e-liquids" used to refill e-cigarettes—are "'tobacco products' within the FDA's regulatory authority." *See Bidi Vapor LLC v. United States Food and Drug Administration*, 134 F.4th 1282, 1284 (11th Cir. 2025) (citing *Deeming Tobacco*

*Products to Be Subject to the Federal Food, Drug, and Cosmetic Act*, 81 FED. REG. 28,974, 29,028 (May 10, 2016)).

The allegations, photographs, and sworn verification of the complaint carry the United States' burden to show that the Defendant Products are tobacco products as defined by the FDCA.

> ii. The Defendant Products are adulterated and misbranded.

The Verified Complaint asserts that the Defendant Products qualify as "adulterated" and "misbranded" tobacco products as defined in Subchapter IX of the FDCA.

Under that subchapter, a tobacco product is "adulterated" if, for one, it "is required by section 387j(a) of this title to have premarket review and does not have an order in effect under section 387j(c)(1)(A)(i) of this title." 21 U.S.C. § 387b(6)(A). Section 387j, in turn, regulates "new tobacco products"— defined as any tobacco product that "was not commercially marketed in the United States as of February 15, 2007"—and subjects them to premarket review by the FDA unless specifically exempted from such review. 21 U.S.C. § 387j(a)(1)– (2).

Here, the Verified Complaint states that the Defendant Products were not commercially available in the United States as of February 15, 2007. Doc. 1 ¶ 29. It further alleges that the Defendant Products were not exempt from

11

premarket review, and that no premarket review of the Defendant Products was initiated by the Defendant Products' manufacturers, nor otherwise completed by the FDA. Doc. 1 ¶¶ 34–36. As further support, the Verified Complaint notes that, after FDA agents initially discovered ENDS devices similar to the Defendant Products at the Marathon in 2023, an Administrative Law Judge in the Department of Health and Human Services Civil Remedies Division found that the ENDS devices were adulterated (and misbranded). Doc. 1 ¶ 42 (citing FDA Docket No. FDA-2023-H-4074; CRD Docket No. T-23-3845). With these allegations, the United States satisfies its burden to sufficiently plead that the Defendant Products are adulterated tobacco products under 21 U.S.C. § 387b(6)(A).

Separately, a tobacco product is "misbranded" if, for one, "a notice or other information respecting [the tobacco product] was not provided as required by such section or section 387e(j)." 21 U.S.C. § 387c(a)(6). Section 387e(j) requires manufacturers of tobacco products to file a report with the FDA describing any new tobacco products they manufacture without prior authorization, explaining either why the product is substantially equivalent to a tobacco product that was available before February 2017, or why it is subject to another FDA exemption.

Here, the Verified Complaint states that no version of the report required by section 387e(j) was provided to the FDA for any of the Defendant

Products. Doc. 1 ¶ 36. And, as previously referenced, a 2023 Administrative Law Judge's decision determined that similar ENDS products offered at the Marathon were both adulterated and misbranded. Doc. 1 ¶ 42. Thus, the United States has also demonstrated that the Defendant Products are misbranded tobacco products under 21 U.S.C. § 387c(a)(6).

Thus, the facts stated in the Verified Complaint support a reasonable belief that the United States can show by a preponderance of the evidence that the Defendant Products are tobacco products that are adulterated and misbranded.

### e. Disposition of the Defendant Products

Because the Defendant Products are adulterated and misbranded tobacco products, they are subject to condemnation and forfeiture. 21 U.S.C. § 334(a)(2).[3]

---

[3] I note that while § 334(a)(1), which allows for condemnation of food, drugs and cosmetics, requires a showing that such items were "adulterated or misbranded when introduced into or while in interstate commerce or while held for sale . . . after shipment in interstate commerce," the subsection concerning adulterated or misbranded tobacco products (as well as counterfeit drugs and medical devices) requires no interstate commerce showing. *Compare* 21 U.S.C. § 334(a)(1) *with* § 334(a)(2); *cf. United States. v. Two Units, More or Less, of an Article or Device, Consisting of a Power Unit and a Chair*, 49 F.3d 479, 482 (9th Cir. 1995) ("Misbranded medical devices are subject to forfeiture without regard to whether they entered interstate commerce.") (citing 21 U.S.C. § 334(a)(2)(D)). In adding tobacco products to § 334(a)(2), Congress made a formal finding that: "The sale, distribution, marketing, advertising, and use of such products substantially affect interstate commerce through the health care and other costs attributable to the use of tobacco products." Family

Once a tobacco product (or other food, drug, or cosmetic covered by the FDCA) is condemned, it must be "disposed of by destruction or sale as the court may, in accordance with the provisions of this section, direct." 21 U.S.C. § 334(d)(1).

Here, the Verified Complaint seeks the condemnation of the Defendant Products and their forfeiture to the United States (Doc. 1 ¶ 1), and the Motion for Default Judgment specifically requests that the Court order that the Defendant Products be destroyed (Doc. 19 p. 7). Given that the Defendant Products never received the required premarket authorization—and that, in any event, the United States wishes to destroy them—I recommend that they be destroyed.

## IV.    Conclusion

For these reasons, I respectfully RECOMMEND that the District Court:

1) Grant the United States' Motion for Default Judgment (Doc. 19);

2) Enter a final judgment in favor of the United States, condemning the Defendant Products, and forfeiting all right, title and interest in them to the United States; and

---

Smoking Prevention and Tobacco Control Act, Pub. Law 111-31, 123 Stat 1776 (2009).

Here, the United States has made no specific showing that the Defendant Products were in interstate commerce, but under the applicable provision of the FDCA, it need not have done so.

14

3) Order the United States to destroy the Defendant Products.

Submitted for the District Court's consideration on May 19, 2026.

_____

NATALIE HIRT ADAMS
United States Magistrate Judge

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.